IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEBRA-ANN WELLMAN,   )
            )
   Plaintiff,    )
            )
  v.         )  Civil Action No. 05-278-SLR
            )
DUPONT DOW ELASTOMERS, LLC, )
            )
   Defendant.   )


**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby (I.D. No. 1016)
Teresa A. Cheek (I.D. No. 2657)
Margaret M. DiBianca (I.D. No. 4539)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6666
Telecopier: (302) 576-3345
Email: bwilloughby@ycst.com; tcheek@ycst.com
Attorneys for Defendant

DATED: November 9, 2007

              

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT ............................................................................................................8

    I.    DDE SHOULD BE GRANTED SUMMARY JUDGMENT ON ALL
        COUNTS OF WELLMAN'S COMPLAINT BECAUSE THERE ARE NO
        GENUINE ISSUES FOR TRIAL. ...............................................................8

    II.   DDE DID NOT ENGAGE IN UNLAWFUL HARASSMENT. ..............................9

    III.  DDE DID NOT ENGAGE IN DISABILITY DISCRIMINATION. ......................12

    IV.  DDE DID NOT ENGAGE IN UNLAWFUL RETALIATION. ............................12

        A.   Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation. ............................13

        B.   Plaintiff Cannot Establish That Her Termination for Job Abandonment
            Was A Pretext for Retaliation. ...........................................................14

    V.   PLAINTIFF'S CLAIMS ARE BARRED BY HER UNREASONABLE
        FAILURE TO NOTIFY DDE THAT SHE WAS BEING SEXUALLY
        HARASSED. .........................................................................................16

    VI.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
        DENIED. .............................................................................................18

CONCLUSION ........................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................ 9

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998).................................................................................... 8, 9, 16

*Carrasco v. Boeing Co.*,
190 Fed. Appx. 650 (10th Cir. 2006)........................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................ 8

*Cooper-Nicholas v. City of Chester*,
No. 95-6493, 1997 U.S. Dist. LEXIS 20810
(E.D. Pa. Dec. 30, 1997) ................................................................................. 10

*Delli Santi v. CAN Ins. Cos.*,
88 F.3d 192  (3d Cir. 1996) ........................................................................... 16

*DiCenso v. Cisneros*,
96 F.3d 1004 (7th Cir. 1996) ........................................................................ 11

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)................................................................................... passim

*Ferguson v. E .I. DuPont de Nemours and Co.*,
560 F. Supp. 1172 (D. Del. 1983)............................................................... 13

*Garone v. UPS*,
436 F. Supp. 2d 448 (E.D.N.Y. 2006) ....................................................... 12

*Hall v. Pa. Dep't of Corrections*, C.A. No. 03-02-1255,
2006 U.S. Dist. LEXIS 68670
(M.D. Pa. Sept. 25, 2006) ................................................................................. 8

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)................................................................................................ 9

*Hodson v. Alpine Manor, Inc.*,
C.A. No. 03-374-E,
2007 U.S. Dist. LEXIS 36870
(W.D. Pa. May 21, 2007)....................................................................... 14, 15

DB01:2466181.1                                                        051952.1010

*Hussein v. Genuardi's Family Mkts.*,
   C.A. No. 00-CV-4905,
   2002 U.S. Dist. LEXIS 430
   (E.D. Pa. Jan. 15, 2002) ...................................................................... 14

*Jackson v. Veterans Admin.*,
   22 F.3d 277 (11th Cir. 1994) .............................................................. 15

*Kunin v. Sears Roebuck & Co.*,
   175 F.3d 289 (3d Cir. 1998) ................................................................ 8

*Lignore v. Hosp. of Univ. of Pa.*,
   C.A. No. 04-5735,
   2006 U.S. Dist. LEXIS 43996
   (E.D. Pa. June 27, 2006) .................................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................ 9

*Mendoza v. Borden, Inc.*,
   195 F.3d 248 (11th Cir. 1999) ............................................................ 11

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986) .............................................................................. 9

*Pa. State Police v. Suders*,
   542 U.S. 129 (2004)...................................................................... 16, 17

*Pennsylvania State Police v. Suders*,
   124 S. Ct. 2342 (2004)......................................................................... 9

*Powell v. United Ins. Co.*,
   No. 04-0829, 2006 U.S. Dist. LEXIS 40644
   (E.D. Wis. June 16, 2006).............................................................. 11, 12

*Quiroga v. Hasbro, Ins.*,
   934 F.2d 497 (3d Cir 1991) ................................................................. 8

*Richards v. City of Wilmington*,
   C.A. No., 03-106-SLR,
   2004 U.S. Dist. LEXIS 4987
   (D. Del. Mar. 24, 2004) ...................................................................... 13

*Robinson v. City of Pittsburgh*,
   120 F.3d 1286 (3d Cir. 1997) ............................................................. 16

*Shaner v. Synthes (USA)*,
   204 F.3d 494 (3d Cir. 2000) ............................................................... 13

iii

*Sinclair v. ATE Mgm't & Serv. Co., Inc.*,
   C.A. No. 95-CV-76172-DT,
   1996 U.S. Dist. LEXIS 19921
   (E.D. Mich. Nov. 27, 1996) ...................................................................................... 16

*Spain v. Gallegos*,
   26 F.3d 439 (3d Cir. 1994) ................................................................................ 10, 12

*Taylor v. Procter & Gamble Dover Wipes Co.*,
   184 F. Supp. 2d 402 (D. Del. 2002),
   *aff'd*, 53 Fed. Appx. 649 (3d Cir. 2002) ...................................................................... 9

*Teymer v. Kraft Foods N. Am.*,
   37 Fed. Appx. 206 (7th Cir. 2002) ............................................................................ 15

*Walker v. Pepsi-Cola Bottling Co.*,
   C.A. Nos. 98-225-SLR, 99-748-JJF,
   2000 U.S. Dist. LEXIS 12635
   (D. Del. Aug. 10, 2000) ............................................................................................ 14

*Willis v. Conopco, Inc.*,
   108 F.3d 282 (11th Cir. 1997) ............................................................................ 14, 15

*Woodson v. Scott Paper*,
   109 F.3d 913 (3d Cir. 1997) ...................................................................................... 13

DB01:2466181.1
051952.1010

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Debra Wellman filed this action against DuPont Dow Elastomers, LLC, ("DDE") on May 9, 2005. Discovery was complete as of June 30, 2007. DDE filed a motion for summary judgment on August 10, 2007, and filed an Opening Brief in Support of its Motion for Summary Judgment on the same date. Plaintiff failed to file an answering brief in a timely manner but the Court granted an extension of time. Plaintiff filed an answering brief on October 12, 2007, calling it her "Opening/Answer Brief in Support of Motion for Summary Judgment." Plaintiff filed a motion for summary judgment on November 2, 2007.

This is Defendant's Reply Brief in Support of its Motion for Summary Judgment and Answering Brief in Opposition to Plaintiff's Motion.

## STATEMENT OF FACTS

Plaintiff relies on the deposition testimony of her treating mental health professionals, Drs. Glacken and Whitehill, and on the testimony of DDE human resources associate Karen Cronin (Pl. Brief 4-5 (D.I. 59)), in support of her opposition to Defendant's Motion for Summary Judgment and her affirmative request for relief. Neither Dr. Glacken nor Dr. Whitehill have any first-hand knowledge of the facts that form the basis for Plaintiff's claims, other than her possible claim that she had a mental disability, described in her brief as a "mood weakness." (D.I. 59 at 4). Karen Cronin, who investigated Plaintiff's complaint under the DDE "Respectful Workplace Policy," does not provide support for Plaintiff's claims, either. In fact, Ms. Cronin's testimony confirmed that Plaintiff failed to make an internal claim of "sexual harassment" but instead simply complained that she was not being treated fairly after she received a performance evaluation that was not to her liking.

Consequently, the facts set forth in Defendant its Opening Brief (D.I. 53, at 7-19) must be viewed as having been conceded by Plaintiff. The following is a summary of the pertinent facts. A more complete statement can be found in Defendant's Opening Brief.

Plaintiff did not initiate an internal sexual harassment complaint pursuant to DDE's anti-harassment policy. (A42; A1; A5; A197-198). On January 23, 2002, Plaintiff sent an email message to Cronin, claiming that her supervisor, Paul Graves, and a co-worker, Mary Ann Price, were accusing her of being a "spy for DuPont." (A202, 203, 204, 206, 214, 215, 241, 243, 244, 245; A187, 188). Plaintiff said nothing that suggested she believed that she was the victim of sexual harassment. (A42; A40; A78; A143; A44; A225). Plaintiff's complaint was precipitated by a perceived threat to her continued employment after Graves criticized Plaintiff's performance at a January 16, 2002, performance review meeting. (A210-211; A219; A125). On January 17, 2002, Plaintiff initiated contact with Karen Cronin, who worked in DDE's human

2

resources department, to complain about Graves and Price.

Cronin promptly investigated Plaintiff's claims based on DDE's "Respectful Workplace Policy," interviewing Plaintiff and eight other individuals, including Graves, about Plaintiff's claims. (A78; A45; A50). Cronin concluded that Plaintiff had not been subjected to hostile, angry or abusive treatment. (A78). While Cronin's investigation was in progress, Plaintiff consulted an Employee Assistance Program ("EAP") provided to DDE employees through a contract with DuPont. (A125; A221, 222, 223). On February 11, 2002, she left work at DDE, never to return. (A125; A115; A270-271). DDE was told that Plaintiff was absent for medical reasons and that she was taking a short-term-disability ("STD") leave. (A270-271).

In April, Plaintiff's EAP counselor suggested an independent medical evaluation ("IME"). (A70; A61; A231). Plaintiff went to see Drs. Sol Kadish and Daniel Kadish for the IME on May 2, 2002. (A70). They concluded she was fit to work but noted that she had stated she did not wish to return to DDE. (A77). Medical records and testimony from her treating doctors confirm that Plaintiff had decided not to return to work at DDE. (A183-184; A185-186).

Plaintiff did express an interest in returning to her "parent company," DuPont. At Plaintiff's request during her STD leave, DDE gave its permission for her to apply to DuPont. (A6). There is no dispute that DDE could not force DuPont to employ Plaintiff; DDE could only tell DuPont that DDE had no objection to DuPont hiring Plaintiff if it chose to do so. (A100).

In August 2002, DDE advised Plaintiff that she had exhausted her STD benefits and that she would have to choose between applying for long-term-disability ("LTD") benefits or returning to work. (A109; A232-235). DDE scheduled two return-to-work meetings and advised Plaintiff that if she did not attend, DDE would regard it as notice that Plaintiff was abandoning her position. Plaintiff did not attend either of the return-to-work meetings and did not respond to

3

requests to verify her continued disability. Accordingly, her employment was terminated for job abandonment on August 26, 2002. (A113; A236-237).

On August 15, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (A102-107; A238). DDE did not receive the Charge until September 12, 2002, well after DDE decided to terminate Plaintiff. (A102-107). After an extensive investigation, the EEOC found no cause to believe that Plaintiff's rights had been violated. (A127).

A summary of Plaintiff's discrimination charge allegations follows.

1.  In the first week of July 2001, Plaintiff received a phone call from a Manager at DuPont telling her that Paul Graves and Mary Anne Price would be coming to the Delaware Technology Center when she worked. The manager referred to Graves as "Mr. Sensitivity" and Mary Anne Price as "Medusa." (A103).

2.  On July 20, 2001, Graves and Price "ordered" Plaintiff to join in a celebration of a co-worker's birthday, and at the birthday lunch, Graves asked Plaintiff too many "personal" questions about her family and work history. (A103).

3.  On July 30, 2001, Graves ordered Plaintiff to not to lock her cabinets or desks. (A103).

4.  On August 3, 2001, while Plaintiff was meeting with Graves, he told someone on the telephone: "I know what to do, she will understand when I am done with her. No, I am not afraid to do this." Graves then accused Plaintiff of being a "gossip." (A104).

5.  On August 13, 2001, Graves asked Plaintiff to clean up the Literature Room and looked up her dress while she was standing on a three-step ladder.[1] (A104).

---

[1] Photograph of ladder appears in the appendix at page A163.

6.      On August 23, 2001, Graves came to Plaintiff's office, "stared at her chest" and made her pick up a pen he had dropped. (A104).

7.      On September 26, 2001, while Plaintiff was in the kitchen area getting coffee, Graves came in and "touched" her when we was standing behind her. She was "disgusted" because Graves said "fill mine up too." (A104).

8.      On November 2, 2001, Graves looked up her dress while Plaintiff was moving boxes in the Literature Room and standing on the same three-step ladder. (A105).

9.      On December 7, 2001, Graves questioned Plaintiff about her request for a "leveling up" of her job. Graves said she had not done a good enough job for re-leveling and rocked back and forth. (A105).

10.      On December 13, 2001, Graves "rub[bed] himself against" Plaintiff. (A105).

11.      On January 3, 2002, during a discussion with Graves about her evaluation meeting, he "grossly" adjusted his trousers and tucked in his shirt. (A105-106).

12.      On January 16, 2002, Graves criticized Plaintiff's performance at a performance review meeting. Graves made Plaintiff look at a poster of a dragon during the meeting. When she tried to roll her chair back to leave, he reached across and grabbed the arm of her chair to stop her, and his arm touched her chest. (A106; A216-217).

13.      On February 7, 2002, Graves told Plaintiff that the incentive trip program that she coordinated as part of her job was being canceled and that "we don't have a place here for you." (A106).

14.      On February 11, 2002, Plaintiff left employment DDE and did not return. (A106-107).

15.    On August 26, 2002, Plaintiff was discharged after refusing to return to work. (A126).

According to the Kadish IME report, Plaintiff has "traits of borderline, hysterical and narcissistic personality disorder," causing her to misperceive and exaggerate events.[2] The Kadish IME report also opined that "several factors raise substantial questions about her allegation" of mistreatment by Graves and Price. (A62). The IME report described discrepancies between the way Plaintiff described her allegations in the interview and the way she described them in documents provided to the evaluators. *Id*. The IME evaluators concluded:

> Plaintiff . . . makes florid and theatrical allegations, describes herself in overly virtuous terms while projecting blame, and engages in splitting by portraying individuals and groups as either all evil or all good. Her personality traits lead her to misperceive social cues. For example, she often interprets routine mannerisms or comments at work as indicative of devious verbal or sexual harassment. These personality characteristics are clearly associated with her pattern of interpersonal conflicts.

(A68-69). However, the Kadishes did not conclude that Plaintiff's condition constituted a disability. To the contrary, they cleared her to return to work:

> Despite her difficulties Plaintiff was not psychologically disabled at the time of this evaluation. She reported that she is not currently experiencing notable affective symptoms, and that she enjoys a full range of daily and leisure activities. She said that she is ready and eager to return to work as soon as possible, but that she would not go back to [DDE].
>
> If she were willing to return to [DDE], she might perform adequately, especially with continued therapy and efforts to alleviate workplace tensions. …

---

[2] By way of additional examples, Plaintiff complained at deposition about events that allegedly occurred after her departure from DDE. For example, she testified that in her later employment at Astra Zeneca: (1) after work she would find that unknown persons had placed incense around her automobile and burned it (A179); (2) there was a strangely significant "silver screw" she found lying by her car (A179); (3) her co-workers would "yell in her ear" factual details of her discrimination charge that she had just made known only to the EEOC (A173-175); and (4) she received a note with a "death threat" (that she has not been able to produce) (A167-169). As a result of these actions, she "fled" to Texas where her brother resides because "Delaware is not a safe state." (A171-172; A165).

6

(*Id*.). DDE's forensic expert, Dr. Neil Blumberg, reached a similar conclusion about Plaintiff's mental condition, reporting that, "Ms. Wellman's underlying Personality Disorder with Histrionic Features is a likely contributor to her tendency to over-respond or exaggerate the significant events in her life," and that she had recovered from a possible bout of "Adjustment Disorder with Mixed Anxiety and Depressed Mood" by November 2002.  (A161-162)

Plaintiff obtained a new position at AstraZeneca, Inc. in September 2003. (A137; A168). She remained in that position until on or about September 15, 2006, when she voluntarily quit. (A133; A169-170). Plaintiff ended her psychiatric treatment in November 2002 and has not sought treatment since then. (142; A191-192).

# ARGUMENT

## I.    DDE SHOULD BE GRANTED SUMMARY JUDGMENT ON ALL COUNTS OF WELLMAN'S COMPLAINT BECAUSE THERE ARE NO GENUINE ISSUES FOR TRIAL.

In response to DDE's motion for summary judgment, Plaintiff seems to address only DDE's argument that her claim is precluded by the affirmative defense described in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (the "*Ellerth-Faragher* defense").[3] Plaintiff claims that Defendant knew that her supervisor, Graves, was discriminating against her based on her gender and took no steps to stop the discrimination, thereby making itself "strictly liable" for the alleged discrimination by Graves. Plaintiff also argues that she was constructively discharged, that her constructive discharge was a tangible employment action, and that DDE consequently may not rely on the *Ellerth-Faragher* defense, although Plaintiff does not explain the basis for, nor cite facts in the record in support of, her conclusory arguments. Plaintiff has failed to address the other arguments DDE asserted in its opening brief.

As explained in Defendant's opening brief, summary judgment should be granted where the plaintiff fails to establish any essential element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff must establish all essential elements using more than "mere allegations, general denials, or vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir 1991). To defeat a motion for summary judgment, Rule 56(c) requires the non-moving

---

[3] Liability may be imposed on an employer for a hostile work environment created by a supervisor only if the plaintiff can prove that the employer "knew or should have known of the harassment and failed to take remedial action." *Hall v. Pa. Dep't of Corrections*, C.A. No. 03-02-1255, 2006 U.S. Dist. LEXIS 68670, *at 36 (M.D. Pa. Sept. 25, 2006) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). In general, an employer is not strictly liable for a hostile work environment. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1998).

party to "do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*quoting* Fed. R. Civ. P. 56). Plaintiff must demonstrate more than a "mere scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Measured against this standard, Plaintiff's claims fail as a matter of law. *See Taylor v. Procter & Gamble Dover Wipes Co.*, 184 F. Supp. 2d 402, 408 (D. Del. 2002), *aff'd*, 53 Fed. Appx. 649 (3d Cir. 2002). Plaintiff's argument that DDE cannot assert the *Ellerth-Faragher* defense becomes relevant only if she can establish the elements of her claim of sexual harassment, which she cannot do.

## II.    DDE DID NOT ENGAGE IN UNLAWFUL HARASSMENT.

Plaintiff cannot prove that she was the victim of a sexually hostile work environment because she cannot establish that she was subject to sufficiently severe or pervasive harassment. To establish a claim of hostile-environment sexual harassment, Plaintiff must demonstrate that the workplace was so permeated with harassing behavior based on gender that an abusive work environment was created. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To be considered severe, the alleged conduct must be so extreme that it amounts "to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 783; *Ellerth*, 524 U.S. at 752; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see also Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (harassment must be "sufficiently severe or pervasive to alter the conditions of employment"). To be considered pervasive, the offensive conduct must occur regularly and frequently; claims consisting of sporadic or isolated incidents will not withstand summary judgment. *See Cooper-Nicholas v. City of Chester*, No. 95-6493, 1997 U.S. Dist. LEXIS 20810 (E.D. Pa. Dec. 30, 1997) (supervisor's comments over nineteen months not frequent enough to create hostile work environment).

9

"Employment discrimination law does not provide a remedy for every unsavory interaction occurring in the course of one's employment." *Lignore v. Hosp. of Univ. of Pa.*, C.A. No. 04-5735, 2006 U.S. Dist. LEXIS 43996, at *29 (E.D. Pa. June 27, 2006). Even if the behavior that Plaintiff claims occurred could be described as "distasteful, vulgar and unprofessional," it does not amount to an objectively hostile work environment and is, therefore, insufficient to withstand the present motion for summary judgment. *See id.* The alleged conduct must be objectively abusive before harassment can be found. *Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994). Plaintiff must demonstrate that her allegations would have caused harm to "a reasonable person in the same position." *Andrews*, 895 F.2d at 1482.

Plaintiff's discrimination charge contains a laundry list of incidents that she claims constituted severe or pervasive mistreatment by her supervisor, Graves, and a female coworker, Price. An objective review of her claims demonstrates that Plaintiff's allegations do not reach the level of severe or pervasive harassment.

a.    Plaintiff alleges that on August 13, 2001, and November 2, 2001, Graves looked up her dress. At the time of the alleged incidents, Plaintiff was standing on a ladder that had only three steps. A photograph of the ladder (A163), demonstrates the objective impossibility of the alleged behavior. Merely standing on a three-step ladder next to a supervisor does not constitute the "severe" behavior required to establish sexual harassment. *Cf. Carrasco v. Boeing Co.*, 190 Fed. Appx. 650 (10th Cir. 2006) (no hostile environment where supervisor allegedly asked plaintiff at least five times about type of underwear she was wearing).

b.    Plaintiff alleges that on August 23, 2001, Graves dropped his pen and made her pick it up, and stared at her chest. Again, from an objective standpoint, these allegations cannot be considered objectively serious enough to constitute sexual harassment. *See Mendoza v.*

10

*Borden, Inc.*, 195 F.3d 248, 249 (11th Cir. 1999) (no harassment where, over eleven months, harasser made inappropriate comment, offensive statement, and several disgusting noises while staring impertinently at the plaintiff).

c.    Plaintiff alleges that on September 26, 2001, Graves "touched" her when he was standing behind her in the coffee room and asked her to "fill his cup up, too." She makes a similar claim that on December 13, 2001, Graves "rubbed himself" against her. Plaintiff apparently claims these incidents were sexual in nature although she does not allege that the touching involved physical contact with an intimate body part. Consequently, these incidents are neither severe nor pervasive. *See DiCenso v. Cisneros*, 96 F.3d 1004, 1009 (7th Cir. 1996) (no hostile environment when physical contact did not involve an intimate body part); *Powell v. United Ins. Co.*, No. 04-0829, 2006 U.S. Dist. LEXIS 40644, at *20 (E.D. Wis. June 16, 2006) (no hostile environment created by touching inside of plaintiff's knee after asking if she wanted to "mess around," rubbing legs during lunch at a restaurant with coworkers, and rubbing shoulders and poking plaintiff in ribs when she objected, because it "did not involve intimate body parts").

d.    Plaintiff alleges that, on December 7, 2001, Graves "rocked back and forth" and, on January 3, 2002, he "grossly" adjusted his trousers while tucking in his shirt. Again, from an objective standpoint, these claims do not establish or suggest any overtly sexual conduct. Plaintiff's subjective reaction, whether due to her histrionic personality traits or other causes, is insufficient to make her claim cognizable. *See, e.g., Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994) (describing objectivity requirement). *See also Garone v. UPS*, 436 F. Supp. 2d 448, 466 (E.D.N.Y. 2006) ("The allegations are trivial [because] there is not a trace of either maliciousness, lewdness, or inequity"); *Powell*, 2006 U.S. Dist. LEXIS 40644, at *17 (alleged

11

actions were not "objectively threatening, harsh, or abusive and arguably cannot even be characterized as vulgar").

e.    Plaintiff claims Graves "contacted" her chest during her performance evaluation on January 16, 2002. According to Plaintiff, she began sliding her chair back, preparing to leave the meeting despite the fact that Graves had not yet completed his review of her performance; she says that Graves remained seated and grabbed the arm of her chair, at which point his arm allegedly contacted her chest. From an objective standpoint, assuming for the sake of argument that this occurred, the contact was plainly accidental and provides no basis for a claim of sexual harassment.

Application of the requisite objective standard makes clear that the alleged incidents, individually and in total, do not rise to the level of severe and pervasive conduct required to establish a cognizable claim for hostile environment. Plaintiff has not attempted to explain how her allegations rise to such a level. Accordingly, her sexual harassment claim should be dismissed.

## III.    DDE DID NOT ENGAGE IN DISABILITY DISCRIMINATION.

Although Plaintiff's EEOC Charge and her Complaint in this Court allege that she has been a victim of discrimination or retaliation based on a "disability," she has never identified the alleged disability nor specified the  basis for her disability discrimination claim. Because Plaintiff has failed to explain how she has can satisfy any of the elements of a *prima facie* case of discrimination under the ADA, she should be deemed to have abandoned her disability discrimination claim and it should be dismissed.

## IV.    DDE DID NOT ENGAGE IN UNLAWFUL RETALIATION.

As is the case with her sexual harassment and her retaliation claim, Plaintiff has not pointed to admissible evidence supporting her claim. Plaintiff bears the burden of demonstrating

12

a *prima facie* case of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took adverse action against her either after, or contemporaneously with, her protected activity; and (3) there is a causal connection between the protected activity and the employer's adverse action. *Richards v. City of Wilmington*, C.A. No., 03-106-SLR, 2004 U.S. Dist. LEXIS 4987, at *15 (D. Del. Mar. 24, 2004) (*citing Woodson v. Scott Paper*, 109 F.3d 913, 920 (3d Cir. 1997)). If the plaintiff establishes a *prima facie* case, the defendant can offer a legitimate, nondiscriminatory explanation for its actions. The plaintiff then must offer evidence showing that the defendant's rationale is merely a pretext to cover up discriminatory motives. *Id.* However, "the plaintiff's 'ultimate burden in a retaliation case is to convince the fact finder that retaliatory intent had a 'determinative effect' on the employer's decision." *Id.* (*quoting Shaner v. Synthes (USA)*, 204 F.3d 494, 501 (3d Cir. 2000)).

   A.    **Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.**

   Plaintiff cannot establish the causal connection required to sustain a viable claim of unlawful retaliation. "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Richards*, 2004 U.S. Dist. LEXIS 4987, at *15 (*quoting Ferguson v. E .I. DuPont de Nemours & Co.*, 560 F. Supp. 1172, 1200 (D. Del. 1983)). Plaintiff cannot establish this causal link because the evidence shows that DDE did not become aware that Plaintiff was asserting a claim of sexual harassment until after Plaintiff's termination. Plaintiff filed a charge of discrimination with the EEOC (the "Charge"), on August 15, 2002. (A124-129). She was terminated for job abandonment on August 26, 2002. (A117-118). A copy of the Charge was not mailed to DDE until September 3, 2002, so DDE did not receive the Charge until after Plaintiff's dismissal. (A102). Because the alleged adverse action (Plaintiff's termination) occurred before DDE first learned of the protected activity (the filing of Plaintiff's discrimination charge), her

13

retaliation claim must fail. *See Walker v. Pepsi-Cola Bottling Co.*, C.A. Nos. 98-225-SLR, 99-748-JJF, 2000 U.S. Dist. LEXIS 12635, at *52 (D. Del. Aug. 10, 2000) (no retaliation where management had no knowledge of EEOC complaint until after adverse employment action had occurred).

> **B.** **Plaintiff Cannot Establish That Her Termination for Job Abandonment Was A Pretext for Retaliation.**

Even if Plaintiff could establish that she had engaged in protected activity, her retaliation claim still fails as a matter of law because the record shows that Plaintiff was terminated for job abandonment. Plaintiff refused to return to work even though she had received medical clearance. DDE warned Plaintiff about the consequences of her refusal to return to work and gave her two opportunities to do so.

An employer may legitimately terminate an employee who abandons her job. *See, e.g.*, *Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir. 1997); *Hodson v. Alpine Manor, Inc.*, C.A. No. 03-374-E, 2007 U.S. Dist. LEXIS 36870, at *52 (W.D. Pa. May 21, 2007); *Hussein v. Genuardi's Family Mkts.*, C.A. No. 00-CV-4905, 2002 U.S. Dist. LEXIS 430, at *21-22 (E.D. Pa. Jan. 15, 2002); *LaResca v. AT&T*, 161 F. Supp. 2d 323 (D.N.J. 2001). "When an employee refuses to show up for work after being informed that her failure to do so will result in the loss of her job, the employer has presented a valid, nonretaliatory reason for terminating that employee." *Willis*, 108 F.3d at 287 (internal citations omitted). *See also Teymer v. Kraft Foods N. Am.*, 37 Fed. Appx. 206, 213 (7th Cir. 2002) ("That an employee refuses to return to work is a noninvidious reason for termination."). Plaintiff was terminated only after she repeatedly refused to return to work. Plaintiff cannot identify any evidence that DDE's reasons for her termination were pretextual. *See*, *e.g.*, *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (no pretext where plaintiff refused to return to work).

Plaintiff's proffered reasons for her failure to return to work will not save her claim from dismissal. Plaintiff's personal preference to be employed by a different company or to work for a different supervisor or at a different location cannot justify job abandonment. In *Hodson v. Alpine Manor, Inc.*, where the plaintiff had abandoned her job after being reassigned following a medical leave of absence, the court dismissed her claims of sexual harassment and retaliation because the plaintiff's refusal to return to work demonstrated that "[n]o issues of discrimination or harassment were even remotely involved in her termination." 2007 U.S. Dist. LEXIS 36870, at *52. *See also Willis*, 108 F.3d at 283 (employee's refusal to return to work unless placed in a different department was a legitimate, nonretaliatory reason for her termination).

It is undisputed that Plaintiff herself made the decision to terminate her employment with DDE. Plaintiff told her treating physicians that she would not return to her job at DDE. Plaintiff argues that she did not want to return to work for her supervisor, Graves. Again, this is insufficient to justify her abandonment of her job. In *Teymer v. Kraft Foods North America*, the plaintiff conditioned her return to work on assignment to a new position in which she would not have contact with certain supervisors. 37 Fed. Appx. at 210. She claimed that the supervisors' "critical, threatening, [and] disrespectful comments" had caused her to take medical leave, the same claim Plaintiff makes here. *Id.* The Seventh Circuit held that the demand for a different supervisor precluded the plaintiff's claim for unlawful retaliation. *Id*. at 213. Plaintiff's attempts to justify her refusal to return to work therefore do not save her retaliation claim. *See also Sinclair v. ATE Mgm't & Serv. Co., Inc.*, C.A. No. 95-CV-76172-DT, 1996 U.S. Dist. LEXIS 19921, at *24 (E.D. Mich. Nov. 27, 1996) (job abandonment precluded plaintiff from establishing causal connection or demonstrating pretext).

15

Legal precedent and the facts of this case amply support DDE's legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Plaintiff has failed to adduce any evidence suggesting that this reason is a pretext. Plaintiff has "the burden of presenting evidence from which a reasonable jury could conclude either that 'the articulated reason is a pretext for retaliation or that a discriminatory reason more likely motivated the employer.'" *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997) (*quoting Delli Santi v. CAN Ins. Cos.*, 88 F.3d 192, 199 (3d Cir. 1996)); *Taylor*, 184 F. Supp. 2d at 418 ("Plaintiff must cast sufficient doubt on these reasons in order to establish that they are a pretext for retaliation."). Since she is unable to establish that DDE's legitimate, nondiscriminatory reason for terminating her is a pretext, DDE is entitled to summary judgment on Plaintiff's retaliatory discharge claim.

## V.    PLAINTIFF'S CLAIMS ARE BARRED BY HER UNREASONABLE FAILURE TO NOTIFY DDE THAT SHE WAS BEING SEXUALLY HARASSED.

An employer is not vicariously liable under Title VII for the sexual harassment of an employee by her supervisor as long as (1) the supervisor's alleged harassment did not culminate in tangible adverse employment action, and (2) the employer can establish (a) that it took reasonable care to prevent and correct sexually harassing behavior, and (b) that the employee unreasonably failed to use any preventative or corrective opportunities provided by the employer or otherwise to avoid harm. *Pa. State Police v. Suders,* 542 U.S. 129, 137-138 (2004); *Burlington Indus.*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. In the present case, DDE exercised reasonable care to prevent and correct sexually harassing behavior. DDE had written policies and procedures in place designed to prevent and remedy sexual harassment. (A1-A4). There is no dispute that Plaintiff failed to take advantage of the policies and procedures available to her. DDE did not have knowledge of Plaintiff's claim of sexual harassment until several months after Plaintiff went out on disability leave and refused to return.

16

DDE's policies were readily accessible by all employees on its internal website. DDE's policies direct employees to report offensive conduct to their supervisor or, if they prefer, to Human Resources. In January 2002, Plaintiff used a different procedure, based on DDE's Respectful Workplace Policy, to complain about Graves and Price, saying nothing about sexually inappropriate conduct. (A5). Plaintiff focused on alleged mistreatment by a female co-worker, Price, as well as her supervisor, Graves, claiming their hostility stemmed from loyalties to their respective former employers (DuPont versus Dow). There was no way for DDE to know or suspect that Plaintiff thought anyone was sexually harassing her. Plaintiff's unreasonable failure to report these allegations satisfies DDE's burden as to the *Ellerth-Faragher* defense, thereby requiring dismissal of her hostile environment sexual harassment claim.

Plaintiff argues nevertheless that DDE constructively discharged her, precluding application of the *Ellerth-Faragher* defense. To prove such a constructive discharge, Plaintiff must go beyond what is required to prove a hostile work environment; as the U.S. Supreme Court held, she must also show "something more," i.e., that her "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *Suders*, 542 U.S. at 147. Under *Suders*, an employer loses its ability to rely on the *Ellerth-Faragher* defense in a constructive discharge case only if the plaintiff's decision to resign is the direct result of an official action, such as demotion or undesirable reassignment, by the supervisor who is the alleged harasser. 542 U.S. at 148. The "official action" that prompted Plaintiff's complaint to Karen Cronin of DDE's Human Resources Department was a the performance evaluation that Graves gave Plaintiff, which suggested that there was room for improvement in her performance. Plaintiff was not demoted or reassigned, and no reasonable jury could possibly conclude that this mildly negative performance evaluation created working conditions so unbearable that any

reasonable person would have resigned. Indeed, Plaintiff herself continued to work for three more weeks. Because the alleged harassment did not culminate in any official action rendering Plaintiff's working environment intolerable, DDE is permitted to rely on the *Ellerth-Faragher* defense. Because DDE, as explained above, has proved the elements of that defense, Plaintiff's claim for sexual harassment is barred and should be dismissed.

## VI.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

Plaintiff has filed a Motion for Summary Judgment, apparently seeking an order that DDE is liable for sexual harassment as a matter of law. Plaintiff's argument is without merit for several reasons.

First, as explained in the preceding section, Wellman misunderstands the import of the *Eller-Faragher* defense. *Eller-Faragher* held that an employer may not be held vicariously liable for the acts of a supervisor when it has in place an anti-harassment policy that the complaining employee unreasonable fails to use. In this case, Wellman's argument is predicated on the inaccurate assumption that DDE admits that actionable sexual harassment in fact occurred. In reality, of course, not only is there no admission that Wellman suffered sexual harassment, but also, as set forth in Argument II above, DDE has shown that it is entitled to judgment as a matter of law in its favor. There is no evidence that Graves in fact engaged in sexual harassment. Further, even accepting as true for the sake of argument all of the allegations in the charge of discrimination Plaintiff filed six months after she voluntarily went on disability leave, Plaintiff has not met the objective  "severe or pervasive" standard for a hostile environment claim.

Second, as noted above, Plaintiff voluntarily abandoned her job rather than return to work or apply for LTD leave. Since Plaintiff cannot establish that she was constructively discharged, her claim fails as a matter of law.

Finally, as set forth in Argument VI above, DDE has shown that Wellman unreasonably failed to use its anti-harassment policy and established the required elements of the *Ellerth-Faragher* defense.

Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

DB01:2466181.1                                                    051952.1010

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant Summary Judgment in its favor on all counts of Plaintiff's Complaint and deny Plaintiff's Motion for Summary Judgment.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/  Teresa A. Cheek

Barry M. Willoughby (I.D. No. 1016)
Teresa A. Cheek (I.D. No. 2657)
Margaret M. DiBianca (I.D. No. 4539)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6666
Telecopier: (302) 576-3345
E-mail: bwilloughby@ycst.com; tcheek@ycst.com
Attorneys for Defendant

DATED: November 9, 2007