IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEBRA-ANN PLAINTIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-278-SLR |
| | ) | |
| DUPONT DOW ELASTOMERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AND LEGAL ISSUES**

In accordance with the Court's Order (D.I. 66) dated February 13, 2008 Defendant DuPont Dow Elastomers, LLC ("DDE") hereby submits this statement of (i) material facts as to which there are no genuine issues to be tried and (ii) legal issues upon which summary judgment is sought.

**ISSUE NO. 1: RETALIATION**

**RETALIATION: LAW**

1. Plaintiff alleges that she was terminated in retaliation for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e17 ("Title VII").

2. The plaintiff bears the burden of demonstrating a *prima facie* case of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took adverse action against her either after, or contemporaneously with, her protected activity; and (3) there is a causal connection between the protected activity and the employer's adverse action. Richards v. City of Wilmington, C.A. No., 03-106-SLR, 2004 U.S. Dist. LEXIS 4987, at *15 (D. Del. Mar. 24, 2004) (citing Woodson v. Scott Paper, 109 F.3d 913, 920 (3d Cir. 1997)).

3. "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Richards, 2004 U.S. Dist. LEXIS 4987, at *15 (quoting Ferguson v. E .I. DuPont de Nemours & Co., 560 F. Supp. 1172, 1200 (D. Del. 1983)). Once the plaintiff has established a *prima facie* case, the defendant can offer a legitimate, nondiscriminatory explanation for its actions. Id. The plaintiff then must offer evidence showing that the defendant's rationale is merely a pretext for discriminatory motives. Id. "[T]he plaintiff's 'ultimate burden in a retaliation case is to convince the fact finder that retaliatory intent had a 'determinative effect' on the employer's decision." Id. (quoting Shaner v. Synthes (USA), 204 F.3d 494, 501 (3d Cir. 2000)).

4. There can be no valid claim for retaliation where management had no knowledge of an EEOC complaint until after adverse employment action had occurred. Walker v. Pepsi-Cola Bottling Co., C.A. Nos. 98-225-SLR, 99-748-JJF, 2000 U.S. Dist. LEXIS 12635, at *52 (D. Del. Aug. 10, 2000).

5. The plaintiff has "the burden of presenting evidence from which a reasonable jury could conclude either that 'the articulated reason is a pretext for retaliation or that a discriminatory reason more likely motivated the employer.'" Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997) (quoting Delli Santi v. CAN Ins. Cos., 88 F.3d 192, 199 (3d Cir. 1996)); Taylor, 184 F. Supp. 2d at 418 ("Plaintiff must cast sufficient doubt on these reasons in order to establish that they are a pretext for retaliation.").

6. An employer may legitimately terminate an employee who refuses to return to work. Willis v. Conopco, Inc., 108 F.3d 282, 283, 287 (11th Cir. 1997). "When an employee refuses to show up for work after being informed that her failure to do so will result in the loss of her job, the employer has presented a valid, nonretaliatory reason for terminating that employee."

Id. at 287 (internal citations omitted). Accord, Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994); Hussein v. Genuardi's Family Mkts., C.A. No. 00-CV-4905, 2002 U.S. Dist. LEXIS 430, at *21-22 (E.D. Pa. Jan. 15, 2002); LaResca v. AT&T, 161 F. Supp. 2d 323 (D.N.J. 2001); Sinclair v. ATE Mgm't & Serv. Co., Inc., C.A. No. 95-CV-76172-DT, 1996 U.S. Dist. LEXIS 19921 (E.D. Mich. Nov. 27, 1996).

7. "That an employee refuses to return to work is a noninvidious reason for termination." Teymer v. Kraft Foods N. Am., 37 Fed. Appx. 206, 213 (7th Cir. 2002). In Teymer, the plaintiff claimed that her supervisors' "critical, threatening, [and] disrespectful comments" had caused her to take medical leave. The Seventh Circuit held that her refusal to return to work unless she were assigned to a new position defeated her retaliation claim. Id.

8. In Hodson v. Alpine Manor, Inc., C.A. No. 03-374-E, 2007 U.S. Dist. LEXIS 36870 (W.D. Pa. May 21, 2007), the court dismissed claims of sexual harassment and retaliation because plaintiff's refusal to return to work demonstrated that "[n]o issues of discrimination or harassment were even remotely involved in her termination." Id. at *52.

## RETALIATION: FACTS

9. Plaintiff's former employer, DuPont Dow Elastomers L.L.C. ("DDE"), was a Delaware limited liability company formed by E.I. duPont de Nemours & Co. ("Dupont") and the Dow Chemical Company ("Dow") on April 1, 1996. (A6)

10. Plaintiff's only internal complaint about her conditions of work was memorialized in an e-mail message she wrote on January 23, 2002 to DDE Human Resources Consultant Karen Cronin, following a performance review meeting with her supervisor, Paul Graves, on January 16, 2002. (A42; A246)

11. Plaintiff's January 23, 2002 complaint consisted of allegations that Graves and a co-worker, Marianne Price, had been hostile, angry and abusive to her because of Plaintiff's

3

status as a former DuPont employee and Graves' status as a former Dow employee. (A226; A227; A239-240; A212-213)

12. Plaintiff's e-mail to Cronin did not suggest or state that she had been subjected to hostility based on sex. (A42; A40; A78; A143; A44; A225)

13. DDE thoroughly investigated Plaintiff's claims and concluded that she had not been subjected to hostile, angry or abusive treatment. (A78; A45; A50, A228)

14. Beginning on February 11, 2002, while DDE was still investigating Plaintiff's complaint, Plaintiff went on sick leave, and then on a short-term disability leave. (A38; A48; A125; A115; A224; A250; A270-271)

15. Drs. Sol and Daniel Kadish saw Plaintiff for an independent medical evaluation ("IME") on May 2, 2002. (A70) The Kadishes concluded that Plaintiff was fit to return to work but noted that she had stated she did not wish to return to work for DDE. (A77)

16. In August, 2002, after Plaintiff had exhausted her paid short-term disability benefits, DDE scheduled and Plaintiff failed to attend two return-to-work meetings, although she had been warned that if she failed to attend, she would be deemed to have abandoned her job. (A109; A112-113; A118; A232-237)

17. On August 26, 2002, DDE notified Plaintiff that her employment was being terminated immediately for job abandonment. (A113; A236-237)

18. On September 3, 2002, the Equal Employment Opportunity Commission ("EEOC") mailed a copy of Plaintiff's discrimination charge, which she had filed on August 15, 2002, to DDE. (A102; A238).

19. As a matter of law, Plaintiff cannot establish a causal connection between the alleged protected activity of complaining about sexual harassment and her termination because

there is no dispute that Plaintiff caused her own termination by abandoning her job. For the same reason, Plaintiff is unable to establish that DDE's stated reason for terminating her employment is a pretext for retaliation.

## ISSUE NO. 3: SEXUAL HARASSMENT

### SEXUAL HARASSMENT: LAW

20. Plaintiff alleges that she was subjected to a hostile work environment because of her sex in violation of Title VII.

21. To establish a claim of hostile-environment sexual harassment, the plaintiff must demonstrate that the workplace was so permeated with severe or pervasive discrimination, abuse, ridicule, or insults, that an abusive working environment was created. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

22. The severity element requires the alleged conduct to be so extreme that it amounts "to a change in the terms and conditions of employment." Faragher, 524 U.S. at 783; Burlington Indus., 524 U.S. at 752; Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); see also Pa. State Police v. Suders, 124 S. Ct. 2342, 2347 (2004) (harassment must be "sufficiently severe or pervasive to alter the conditions of employment").

23. To be pervasive, the offensive conduct must occur regularly and frequently; sporadic or isolated incidents are not sufficient to withstand summary judgment. See Cooper-Nicholas v. City of Chester, No. 95-6493, 1997 U.S. Dist. LEXIS 20810 (E.D. Pa. Dec. 30, 1997) (supervisor's comments over nineteen months not frequent enough to create hostile work environment).

24. "Courts have set a high standard for what constitutes severe and pervasive harassment." Harvill v. Westward Commc'n, LLC, 311 F. Supp. 2d 573, 581 (E.D. Tex. 2004).

25. "Employment discrimination law does not provide a remedy for every unsavory interaction occurring in the course of one's employment" Lignore v. Hosp. of Univ. of Pa., C.A. No. 04-5735, 2006 U.S. Dist. LEXIS 43996, at *29 (E.D. Pa. June 27, 2006). Even if alleged sexually harassing conduct could be described as "distasteful, vulgar and unprofessional," it does not necessarily amount to an objectively hostile work environment sufficient to withstand a motion for summary judgment. See id.

26. In Stephenson v. City of Phila., C.A. No. 05-1550, 2006 U.S. Dist. LEXIS 43998, at *33-34 (E.D. Pa. June 27, 2006), the court held that the absence of physical threats weighs strongly against a finding of severe or pervasive conduct.

27. In DiCenso v. Cisneros, 96 F.3d 1004, 1009 (7th Cir. 1996), the court found there was no hostile environment when the alleged physical contact did not involve an intimate body part.

28. In Garone v. UPS, 436 F. Supp. 2d 448, 466 (E.D.N.Y. 2006), the court rejected claims of sexual harassment, commenting, "The allegations are trivial [because] there is not a trace of either maliciousness, lewdness, or inequity."

29. In Powell v. United Ins. Co., No. 04-0829, 2006 U.S. Dist. LEXIS 40644, at *20 (E.D. Wis. June 16, 2006), the court found that the claimed physical contact, touching the inside of the plaintiff's knee after asking if she wanted to "mess around," rubbing his legs against hers during lunch at a restaurant with coworkers, and rubbing her shoulders and poking her in the ribs when she objected, constituted only "minor" physical contact because it "did not involve intimate body parts." The court found that the alleged actions were not "objectively threatening, harsh, or abusive and arguably cannot even be characterized as vulgar."

30.     In <u>Penry v. Federal Home Loan Bank of Topeka</u>, 155 F.3d 1257 (10th Cir. 1998), the court held that the plaintiff failed to allege sufficiently severe or pervasive conduct by her supervisor to impose liability where the allegedly harassing conduct consisted of the following: (1) on business trips, her supervisor questioned about her sexual dreams and insisted that she work in his hotel room despite her repeated protests; (2) her supervisor commented about her bra strap and followed her to the bathroom; (3) her supervisor stared at her while she was working at least twice a week; (4) her supervisor leaned against her repeatedly while he tried to look down her blouse; (5) her supervisor needlessly touched her on numerous occasions; and (6) her supervisor often snuck up and grabbed her from behind.

31.     An employer is not strictly liable for a hostile work environment. <u>Kunin v. Sears Roebuck & Co.</u>, 175 F.3d 289, 293 (3d Cir. 1998).

32.     Liability may be imposed only if the plaintiff is able to prove that the employer "knew or should have known of the harassment and failed to take remedial action." <u>Hall v. Pa. Dep't of Corrections</u>, C.A. No. 03-02-1255, 2006 U.S. Dist. LEXIS 68670, *at 36 (M.D. Pa. Sept. 25, 2006) (<u>citing</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)).

**SEXUAL HARASSMENT: FACTS**

33.     Plaintiff claims that on July 20, 2001, Graves and Price ordered her to attend a group lunch to celebrate a co-worker's birthday, and that at the lunch Graves asked her too many personal questions. (A103)

34.     Plaintiff does not allege that Graves' questions had to do with sexual or romantic matters.

35.     Plaintiff claims that on July 30, 2001, Graves ordered her to not to lock cabinets or desks in the office. (A103)

36.    Plaintiff claims that on August 3, 2001, she had a one-on-one meeting with Graves, during which she heard Graves say on the telephone: "I know what to do, she will understand when I am done with her. No, I am not afraid to do this." According to Plaintiff, Graves then accused her of being a "gossip." (A104)

37.    Plaintiff claims that on August 13, 2001, and November 2, 2001, Graves attempted to look up her dress while she was standing on a three-step library ladder. (A104-105)

38.    To be able to see up Plaintiff's dress while she was standing on the ladder, Graves would have had to be lying on the floor, as shown by a photograph of the ladder. (A163)

39.    Plaintiff does not claim that Graves was lying on the floor during the incidents in question.

40.    Plaintiff claims that on August 23, 2001, while in her office, Graves dropped his pen and made her pick it up and that on the same occasion he stared at her chest. (A104)

41.    Plaintiff claims that on September 26, 2001, Graves "touched" her when he was standing behind her in the coffee room and asked her to "fill his cup up, too." (A104)

42.    Plaintiff does not claim that Graves touched her on a private or intimate area of her body. (A105)

43.    Plaintiff claims that on December 13, 2001, Graves "rubbed himself" against her. (A105)

44.    Plaintiff does not claim that Graves caused contact between private or intimate areas of either of their bodies. (A106)

45.    Plaintiff claims that on January 3, 2002, Graves "grossly" adjusted his trousers while tucking in his shirt. (A105-106)

DB01:2526469.1    051952.1010

46. Plaintiff claims that on January 16, 2002, while she and Graves were sitting side-by-side discussing her performance review, she began sliding her chair back, preparing to leave the meeting despite the fact that Graves had not yet completed his review, and Graves reached across her and grabbed the arm of her chair, allegedly bringing his arm into contact with her chest. (A106; A216-217)

47. Plaintiff claims that on February 7, 2002, Graves told her he was cancelling the incentive trip program, and that after speaking with a superior, "we don't have a place here for you." (A106)

48. DDE is entitled to judgment as a matter of law on Plaintiff's claim of sexual harassment because her allegations do not rise to the requisite level of conduct that is either so severe or so pervasive that a reasonable person in Plaintiff's position would have felt that it created an abusive work environment.

### ISSUE NO. 4: ELLERTH-FARAGHER DEFENSE

### ELLERTH-FARAGHER DEFENSE: LAW

49. The Supreme Court has held that an employer is not vicariously liable under Title VII for the sexual harassment of an employee by her supervisor, so long as there was no tangible employment action and the employer can establish the following: "(a) that the employer exercised reasonable care to prevent and correct any sexually harassing behavior; and (b) that the plaintiff-employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., 524 U.S. at 765; Faragher, 524 U.S. at 807.

### ELLERTH-FARAGHER DEFENSE: FACTS

50. DDE had written policies and procedures in place designed to prevent and remedy sexual harassment. (A1-A4)

51. Plaintiff complained about her supervisor and a co-worker, but she did not allege that she was mistreated because of gender. (A42; A1; A5; A197-198).

52. As a matter of law, DDE is entitled to the protection of the Ellerth-Faragher defense because DDE had a procedure in place for preventing and remedying sexual harassment and Plaintiff unreasonably failed to take advantage of the procedure by making an internal report of sexual harassment and allowing DDE to use its internal process to investigate her allegations and to provide a remedy for any validated claims.

## ISSUE NO. 5: DISABILITY DISCRIMINATION

## DISABILITY DISCRIMINATION: LAW

53. Plaintiff seems to be asserting a claim under the Americans With Disabilities Act, 72 U.S.C. §§ 12101-13 ("ADA").

54. To present a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: (1) she has a "disability" within the meaning of the ADA; (2) she is otherwise qualified for her position, meaning that she can perform the essential functions of her job with or without reasonable accommodations; and (3) she has suffered an adverse employment decision as a result of discrimination based on her disability. Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).

55. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of an individual's major life activities." 42 U.S.C. §12102(2)(A).

56. The courts have repeatedly held that personality traits and disorders and other mental impairments that do not substantially limit participation in a major life activity are not disabilities within the meaning of the ADA. See, e.g., Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998) (employee with schizotypal personality disorder and

10

depression was not disabled because she was not substantially limited in any major life activity); Zirpel v. Toshiba Am. Info. Sys., Inc., 111 F.3d 80 (8th Cir. 1997) (employee with panic disorder was not disabled because not substantially limited in any major life activity); Soileau v. Guilford of Me., Inc., 105 F.3d 12, 14-16 (1st Cir. 1997) (same result where employee had dysthymia; "ability to get along with others" is not a major life activity); Breiland v. Advance Circuits, Inc., 976 F. Supp. 858, 863-864 (D. Minn. 1997) (same result where employee had schizoid personality disorder, depression and anxiety, resulting in misperception of social cues, reclusive behavior and inappropriate expressions of anger); Schwartz v. The COMEX, C.A. No. 96-3386-LAP, 1997 U.S. Dist. LEXIS 4658 (S.D.N.Y. 1997) (same result where employee had paranoid thought disorder); Hatfield v. Quantum Chem. Corp., 920 F. Supp. 108 (S.D. Tex. 1996) (same result where employee with borderline personality disorder, depression and post-traumatic stress disorder claimed that supervisor had sexually harassed him and that people generally were harassing him at work).

## DISABILITY DISCRIMINATION: FACTS

57.  Plaintiff has failed to identify the nature of her alleged disability or the specific basis for her claim of disability discrimination, but assuming that Plaintiff is contending that she suffered from a mental impairment that substantially limits her in one or more major life activities, there is insufficient medical documentation to support that contention.

58.  The May 9, 2002 IME report (A67-68) stated that Plaintiff had "traits of borderline, hysterical, and narcissistic personality" that led her to make "florid and theatrical allegations, describe[] herself in overly virtuous terms while projecting blame, and engage[] in splitting by portraying individuals and groups as either all evil or all good," and that led her "to misperceive social cues" so that she "often interpret[ed] routine mannerisms or comments at work as indicative of devious verbal or sexual harassment." However, the IME examiners (a

11

psychologist and a psychiatrist) concluded that, "Despite her difficulties Plaintiff was not psychologically disabled at the time of this evaluation. She reported that she is not currently experiencing notable affective symptoms, and that she enjoys a full range of daily and leisure activities. She said that she is ready and eager to return to work as soon as possible, but that she would not go back to [DDE]."

59. As a matter of law, Plaintiff cannot establish that she was an individual with a disability as defined by the ADA.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Barry M. Willoughby*

Barry M. Willoughby (I.D. No. 1016)
Teresa A. Cheek (I.D. No. 2657)
Margaret M. DiBianca (I.D. No. 4539)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6666
Telecopier: (302) 576-3345
E-mail: bwilloughby@ycst.com
Attorneys for Defendant

DATED: March 7, 2008